Good morning, Your Honors. Christopher Stender, appearing on behalf of Anna Bertha Arjona-Vargas, the petitioner in this matter. The most striking thing about this case is that this case really revolves around whether or not the petitioner is eligible for adjustment of status. That was the issue that, when this case was before the Court previously, government counsel and petitioner agreed that the remand be agreed to and this case sent back to the Board so that the Board may address whether or not the petitioner was eligible for adjustment of status. She has a U.S. citizen husband. The visa petition has been approved. She has U.S. citizen children. And the Board seems to always sidestep the issue of whether or not there is eligibility for adjustment of status. Instead, the Board and the government focus on whether or not the petitioner was eligible for cancellation or removal at the time of her original hearing. When did your client become eligible for adjustment of status? Well, the visa petition was filed by the husband when he was a lawful permanent resident, I believe, in 2001, while the original appeal was still pending. That appeal, I believe, wasn't dismissed until 2004, if I'm not mistaken. Was there a petition for review to the Ninth Circuit? There was not. So the appeal to the BIA was pending? Yes. So was the counsel aware that she had become eligible for adjustment of status? Well, if you look at the record, I think it's problematic. There's a first counsel in Los Angeles, and there's issues there, but the second counsel is in Phoenix. The second counsel filed for some appeal, never files an appeal brief in support of the original appeal, apparently has very little contact with the petitioner. The petitioner in her affidavit states that she did not know that her appeal was dismissed until sometime after 2004 when she went to Mr. Munoz's office to inquire about why she could not renew her work permit. And at that time, Mr. Munoz informed her that the appeal was dismissed. So certainly it could have been appealed. There was no reason for it not to be appealed. But looking at the record made by Mr. Munoz, I think it's somewhat problematic in that it appears at least to have suffered from a lack of attention. Certainly Mr. Munoz should have been aware. And there is more precedent permitting that a case be continued or administratively closed if there is an alternative form of relief, which there clearly was in this matter. It really kind of begs the question, if this case had been handled appropriately from the beginning, then certainly the petitioner would be able to adjust her status. There is no impediment to her adjustment of status. She's grandfathered under a law that's since expired under the Immigration Nationality Act, Section 245I. Counsel, could I interrupt you? I'm hearing this by speakerphone, and you need to be close to the microphone and speak into it for it all to come through. I'm only getting all your arguments. Is this better? It is better. I'm sorry. Thank you. Okay. So again, what this case really revolves around is that, and if you look at the remand that was sent back to the Board, the government agreed that the Board should address whether or not the petitioner is eligible for adjustment of status. There was some intervening case law between the Board's first decision and their second decision where they said, well, by law, she's not eligible because she failed to post a voluntary departure bond. She's precluded. The government and petitioner agreed that it be remanded, but if you look at the agreed languages that they addressed the adjustment of status, clearly that is the superior form of relief. And there is Board precedent that if there is another way to get a green card, for example, adjustment of status, that is a ground to deny cancellation or removal. The Board doesn't address that. They just avoid the issue altogether, concentrate only on the cancellation or removal issue, and then promptly deny it, really without ever giving any discussion of why the petitioner's adjustment of status should be denied. They just look at the case as if it were frozen in time back in 2004 and say, well, she hasn't made out a prima facie case. Now, if you look at why she did not make out a prima facie case, you can see that there are a number of problems in the record where the first attorney concol never filed the application for cancellation or removal. There were no reasonable actions taken by attorney concol. She didn't ask necessarily for continuance or try to get a prima facie application filled out, something that probably would have taken about 15 minutes. The affidavit from the petitioner says they looked for her application for about an hour, and then they just went to court to see what would happen. And from there, attorney concol apparently doesn't do anything, and then the case gets passed over to attorney Munoz in Phoenix, who files a notice of appeal, doesn't file a brief, doesn't file a motion for remand, doesn't advise the court that there's a potential for adjustment of status, and just kind of lets the case die out. Whether or not there is a prima facie case, I think there is a prima facie case displayed for cancellation or removal, if that is what the Court would like to focus on, because as I've noted, the petitioner does have a U.S. citizen husband. The visa petition is approved. There are two U.S. citizen children. Birth certificates are in the record. And I think what's somewhat interesting, too, is that after the remand to the board, the board does not issue a briefing schedule. The board does not say anything. They just turn around and issue another decision and say, well, again, there's no briefing schedule. They just issued their decision, and then they fault the record and say, well, there should have been a better showing for cancellation or removal, and don't really fully discuss all these other issues, both legal and factual, why the record maybe is incomplete because of the first counsels. They don't discuss their own precedent discussing that. If there is another form of relief, like adjustment, that they are not going to grant cancellation, which is considered like a last resort. And then I think there is some intervening precedent that came on. I submitted in a 20HA brief a matter of Calderon-Hernandez. Previously, it could have been argued that you had to have an affidavit to show exceptional, extremely unusual hardship to a qualifying relative, which in this matter would be the spouse and the two children. The Board kind of looked at their precedent and said, you know, when you have U.S. citizen children, especially and probably other U.S. citizen or lawful permanent resident qualifying relatives, it's not necessary to submit an affidavit. We're going to presume some hardship. Now, is it going to be rise to the level? Well, that's really ultimately a discretionary determination that's going to be done at hearing, but there is a presumption that there is some hardship. I think that's obvious on the record. And without the opportunity to have the case remanded and develop that in the record, certainly I think that puts the petitioner at a disadvantage. I notice I have about two minutes left. I think I'd like to reserve the rest of my time for rebuttal unless the Court has any questions at this point. Good morning, Your Honors. May it please the Court. Joseph O'Connell on behalf of the Attorney General. Your Honors, the Board's decision in this case denying the Petitioner's untimely motion to reopen was a proper exercise of discretion. Yes, Your Honor. Better? Okay. Here, the Petitioner in her motion to reopen alleged that she was provided ineffective assistance of counsel during her underlying removal proceedings. However, she failed to present any arguments, evidence, or allegations that she is eligible for the underlying relief, which is cancellation of removal. Accordingly, the Board correctly concluded that she failed to show that she was prejudiced by her former counsel's performance and correctly denied her untimely motion to reopen. What about the adjustment of status? The Board addressed the adjustment of status. They said it's not exceptional circumstances to warrant reopening. That's correct. Sui sponte reopening. It's not exceptional circumstances. Not only that, it does not provide an excuse to the untimeliness of her motion to reopen. The Board said that twice in both. Is it a basis for relief? It's a basis for relief, assuming that she doesn't have a final order of removal, which she does in this case. And the Board noted, and there's Ninth Circuit precedent, it's a Kimian v. INS, that where you allege in a motion to reopen that you are prima facie eligible for adjustment of status, that motion to reopen has to be timely, which means it has to be filed within 90 days of the Board's final decision in this case, which was back in 2002, 2003. Kennedy. This Petitioner seems like one who would be, what are we gaining? What is the country gaining by deporting her, removing her? Does she fall within the parameters of the so-called Morton memo? Well, first, I'd like to note that she is removable by statute. She's removable under the law. But secondly, I'd like to note that I informed Petitioner that she would be ostensibly eligible for a form of prosecutorial discretion. In this case, because it's the denial of a motion to reopen, she would ostensibly be eligible for a form of PD called deferral of removal, which DHS issues through their enforcement and removal offices. But I also informed Petitioner and her counsel that any grant of prosecutorial discretion in the form of deferral of removal would be conditioned on two things at this point in the case. First, she would need to be eligible for that, which she appears to be. She would need to pass a background check, things like that. And secondly, ERO at this point requires that she withdraw her petition for review. I believe this case was in mediation, and I think we discussed that, but Petitioner counsel said it. Ginsburg. I don't know who declined. We discussed the issue of deferral of removal, and Petitioner has said that she is not interested in deferral of removal at this point. So. Would you object to going back to mediation and working that out? I mean, to me, this is a classic case of she clearly had ineffective assistance of counsel. Otherwise, there would have been a petition for review. I mean, the things that a competent lawyer, a competent lawyer would not lose her application right before the hearing, right? That's correct. However, however, I have a response to that, if I may. The board didn't address ineffective assistance. I realize that. But they went all the way to prejudice, even assuming she was provided ineffective assistance. And I'd like to note the attorney wasn't disciplined by the California State Bar in this case. But even assuming she was, there's no prejudice because she was an eligible cancellation of removal. In her motion to reopen, she didn't even submit an application. She didn't submit any arguments, evidence. And when Petitioner says there's prima facie evidence for cancellation, there is none. There is no hardship evidence whatsoever in this case. Well, she does have two U.S. citizen children. Yes. Yes, Your Honor. And wouldn't a competent person have put in some evidence of hardship to them if their mother is removed? Assuming there is some, but that's a very, very high standard now under the new cancellation of removal. It's extreme, extremely unusual hardship. They didn't put any. They don't put any evidence. But there was none presented, even in the motion to reopen. That's what I mean. They didn't put any in. That's why I'm my sense is that she had terribly incompetent counsel. But even with the motion to reopen, there's no evidence. Even allegations. There's none in her motion to reopen alleging ineffective assistance of counsel. And you can assume that there even was ineffective assistance. I'm not going to concede that there was. But you can assume that there was or operate under that presumption that there was ineffective assistance of counsel. But again, there's still no prejudice. Even in her latest motion to reopen, there's no evidence, no arguments, no allegations, nothing. And it all goes back, the denial of this motion to reopen, all goes back to this prejudice issue. And there is a procedural deficiency. The prejudice issue has not been satisfied. So, again. Counsel, can I ask you, isn't there hardship in being separated from a husband and children? I'm sorry. We couldn't hear you very well, Judge Noonan. Isn't there hardship in being separated from a husband and children? I'm asking counsel. I respect that, Your Honor. But again, those are the normal consequences of deportation or removal. And that does not satisfy the extremely unusual standard that is in the statute. And again, there was no arguments or evidence in support of that argument. Well, it states that in itself. But, you know, what is happening here, does that conform with the Attorney General's new policy on what has priority and what does not have priority? Does it conform with the Attorney General's present policy? Does it conform with the Attorney General's policy, which is, I think, the question I    Does it conform with the Attorney General's policy on what does not have priority? Well, that goes, Your Honor, Judge Noonan, that goes to the prosecutorial discretion issue, which we've discussed, which she would be ostensibly eligible for in the form of deferral of removal, which Petitioner has declined at this point in proceedings. Well, would you object if we referred this to mediation to possibly work that out? I would not object to that, as long as, I mean, we've argued the merits of the case and I would not object to seeing if Petitioner would be willing to accept deferral of removal at this time. But again, they're conditioned on those two things, where if ERO grants deferral of removal, she would, again, need to pass a background check and all those things. And secondly, she would withdraw this petition with prejudice. So those are those at this point in proceedings, those are the requirements that ERO requests. You know, what we've been doing is dismissing. We've, in these cases, we dismiss the appeal and remand. That's what we've been doing. That's the form of prosecutorial discretion called administrative closure. And because of the, because this is the denial of a motion to reopen, DHS doesn't consent to administrative closure in these cases. Instead, they will consent to deferral of removal. It's just a different form of relief. And it's essentially an agreement by the Enforcement Removal Office with Petitioner that they will simply not remove them for a period of time. It's renewed, you know, assuming that they continue to pass background checks and things like that. So that's what the case is. But again, I would not object to putting it back, putting it in mediation for the first time to discuss it. But if it doesn't work out in mediation, then the case would need to be decided on the merits. Well, what we would do is send it to mediation, hope it works out, and then decide it afterwards when it came back. I would be fine with that, Your Honor. Your Honor, unless there's any more questions, we'll rest on the brief. Okay. Thank you, counsel. Yeah. I'd like to address the, and the Court's inquiry about mediation. And we did engage in some discussion regarding that. I think what made it unpalatable to the Petitioner is, one, that the petition had to be, our appeal had to be dismissed with prejudice. And secondly, there is a difference between prosecutorial discretion and deferral or removal. As Mr. Connell has pointed out, deferral or removal is granted by the ERO, the Enforcement Removal Office. It's basically deportation officers. It's completely at their discretion. And it can be withdrawn at any moment. And there's no guarantee how much time would be granted. It could be a 60-day. It could be 90 days. There's no appeal from that. If we dismissed our petition, we'd have nothing else pending. Maybe you could negotiate an exception with them and try to get administrative closure or something. I mean, maybe you could, because my, looking at this record, I mean, she hasn't committed a crime. She's here working, raising kids, paying taxes, whatever. She's not, you know, she's not one of those people that they want to march out of the country right now. And she certainly fits within the Morton Memo. And maybe you could negotiate something that's more favorable that's not at the whim of the prosecutorial body. Yeah, absolutely. I'm more than willing to go back at it. But anyways, the case has been fairly screwed up. I don't know what your relief you can get at this point. No, I don't. And it's not your fault. I'm not holding you responsible for that. Thank you. But you did the best you could with what you had, and you know that. Right. No, I absolutely would definitely look at it. Administrative closure would absolutely resolve all the issues if the government would be willing to do that. But as the government pointed out, since this is not a direct appeal, this is an unemotionally open. I don't know what the internal policy considerations are, but that's an issue. Right. And for you to think about and for them to think about. Right. And I did discuss this with a petitioner before I declined it, and then we appeared today at argument. But again, if there's any way to resolve this, and I think the government said they're willing to do it, if the court would refer this back into mediation, I would absolutely like to further explore those possibilities, because I think that would be the appropriate resolution. And I agree. She's eligible. There is no grounds to deny her adjustment. If anybody would look at that, there are no criminal or other considerations really in the record. Except that she's had this whole history, proceedings, and none of those arguments were made. And you didn't even – not you, but whoever before – didn't even make the Lozado arguments, put the prior attorneys up before the State Bar. Right. And the Bar didn't discipline the person, because more than five years had passed. They didn't really look at the merits of it. I understand that. But, again, I think the prejudice issue, if the court does ever get to the issues of that, I think it is apparent on the record itself. And I think what's kind of lost here is that cancellation really is not a viable form of relief when there is another form of relief like adjustment of status. And that's why even during the first remand that the government agreed to, it was agreed that the adjustment is really the only form of relief that the board would really consider under the circumstances. Thank you. Right. We'll just sit here. The equities are there. Yeah. So hopefully you all can work it out. Thank you. All right. Arjona Vargas is submitted.
judges: Noonan, Wardlaw, Fisher